The Honorable H. Darcy Bone Mayor City of Maitland Post Office Box 66 Maitland, Florida 32751
Dear Mayor Bone:
You ask substantially the following question:
 May the City of Maitland require boating licenses and impose license fees for vessels operating on the waterways within the limits of the city?
In sum, I am of the opinion that:
 The City of Maitland may not require boating licenses and impose fees therefor on all vessels operating within the limits of the city.
According to information supplied to this office, a citizens advisory committee recently reviewed the ordinances of the City of Maitland pertaining to the regulation and operation of boats. The committee, concerned about the increase in recent years of boating fatalities and injuries, has recommended several changes which the city council is interested in implementing.
While this office has not been provided with a copy of the proposed ordinances, the city attorney has advised this office that the city proposes to impose a toll or fee upon all boats operating within the city limits to offset the cost of patrolling and maintaining the waterways within the city limits. The city would either require the vessel to display a valid toll receipt or the operator of the vessel to have in his possession a valid toll receipt in order to operate a vessel on the city's waterways. The city would require proof of satisfactory completion of certain boating safety courses before issuing a license. The city would also prohibit vessels from operating above certain speeds in some areas.
Section 1(b), Art, VII, State Const., provides that "[m]otor vehicles, boats, airplanes . . . as defined by law, shall be subject to a license tax for their operation in the amounts and for the purposes prescribed by law. . . ."[1] Chapter 327, F.S. provides a comprehensive scheme for the registration of vessels[2] within the state. Section 327.21, F.S., specifically provides that "[i]t is the legislative intent that vessels be registered and numbered uniformly throughout the state."
Counties of 100,000 persons or more are authorized to impose an annual registration fee on vessels registered, operated or stored in their jurisdiction.[3] Counties imposing such a fee may establish by interlocal agreement with one or more of the municipalities within the county, a distribution formula for dividing the proceeds of the fee or for the use of the funds for boating-related projects within the county and/or municipality.[4]
Prior to its amendment in 1984,[5] s. 327.22, F.S. 1983, authorized municipalities to impose a license fee for the regulation of resident boats. However, with the exception of those municipalities imposing a registration or license fee prior to April 1, 1984,[6] Ch. 327, F.S., no longer authorizes municipalities to impose such fees. I am not aware of any other provision which would authorize a municipality to impose such fees.[7]
Accordingly, I am of the opinion that the City of Maitland is not authorized to impose a license fee or toll on vessels operating within the limits of the city.[8]
Section 327.22(1), F.S., however, provides that nothing in Chapter 327, F.S., shall be construed to prohibit a municipality that expends money for the patrol, regulation, and maintenance of waterways and for other boating-related activities in the municipality from regulating vessels resident in such municipality.
In addition, s. 327.60(1), F.S., provides:
 The provisions of ss. 327.01-327.11, 327.13-327.16, 327.18, 327.19, 327.28, 327.30-327.40, 327.44-327.51, 327.54, 327.56, and 327.65 shall govern the operation, equipment and all other matters relating thereto whenever any vessel shall be operated upon the waterways or when any activity regulated hereby shall take place thereon. Nothing in these sections shall be construed to prevent the adoption of any ordinance or local law relating to operation and equipment of vessels, except that no such ordinance or local law may apply to the Florida Intracoastal Waterway and except that such ordinances or local laws shall be operative only when they are not in conflict with this chapter or any amendments thereto or regulations thereunder. (e.s.)
Regulation of vessels on the waterways within its boundaries is permissible by a municipality only to the extent that such regulation is not inconsistent or in conflict with the provisions of Ch. 327, F.S., or regulations adopted thereunder. Such ordinances may not, however, apply to the Florida Intracoastal Waterway.
Regulations restricting boat speeds within certain areas would appear to fall within a municipality's authority to regulate the operation of vessels within its boundaries.[9] However, I cannot conclude that a municipality's authority to regulate the operation and equipping of boats on the waterways of the municipality encompasses the authority to impose license requirements on all operators of vessels coming within the municipality's boundaries.
In City of Winter Park v. Jones, 392 So.2d 568 (5 D.C.A.Fla., 1980), the court considered whether a municipality could require an annual registration requirement on all boats, resident and non-resident, using its waterways under the provisions of Ch. 371, F.S. (now Ch. 327, F.S.). While municipalities were authorized by statute at that time to impose a license fee on resident boats, the court concluded that the city was not authorized to require annual registration requirement on all boats using its waterways.
 By adopting Section 371.62, Florida Statutes (1979), the legislature expressed its intent to establish uniform registration and licensing for all boats traveling the waters of this State. . . . The first portion of the statute, in requiring all boats to be taxed and certified as motor vehicles, manifestly expresses the Legislature's intent to preempt the registration of boats.[10]
While the statutes have been renumbered and amended since the decision in City of Winter Park v. Jones was rendered, I find no evidence of legislative intent to expand a municipality's authority to regulate in this area. The language relating to municipality's authority to regulate vessels has remained substantially unchanged.
Based upon the above, I am of the opinion that the provisions of Ch. 327, F.S., do not authorize a municipality to adopt a registration or license requirement on all vessels operating upon the waterways within its boundaries.[11]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] The term "law" as used in the Constitution has been interpreted to mean an enactment by both houses of the state Legislature. See, Advisory Opinion to Governor, 22 So.2d 398
(Fla. 1945); Grapeland Heights Civic Association v. City of Miami,267 So.2d 321, 324 (Fla. 1972) (" `law' in our constitution means an enactment by the State Legislature . . . not by a City Commission or any other political body").
[2] The term "Vessel" as used in Chs. 327 and 328, F.S., is synonymous with "boats" referred to in s. 1(b), Art. VII, State Const., and includes every description of watercraft, barge, and air boat other than a seaplane on the water, used or capable of being used as a means of transportation on water. Section327.02(27), F.S.
[3] Section 327.22(2), F.S.
[4] Section 327.22(3), F.S.
[5] Section 7, Ch. 84-184, Laws of Florida.
[6] Section 327.22(2), F.S.
[7] While s. 166.201, F.S., provides that a municipality may raise, by taxation and licenses authorized by the Constitution or general law or by user charges or fees authorized by ordinance, amounts of money which are necessary for the conduct of government, this office has previously recognized that this provision does not grant any taxing power to a municipality. Compare, s. 166.221, F.S.
[8] See, AGO 80-72 stating that the Legislature had failed to specifically grant by general law the power to municipalities to impose a municipal license tax on all boats using the waterways within a municipality's boundaries. The limited exception recognized in that opinion which was provided in s. 371.63, F.S. 1979 (now s. 327.22, F.S.) for the licensing of boats resident in the municipality was subsequently deleted. And see, AGO 65-7 (municipality incorporated under general law may not impose a municipal license tax on boats of nonresidents navigating in the navigable waters within its corporate limits).
[9] Cf., s. 327.46(1), F.S., providing that the Department of Natural Resources has the authority to establish by rule restricted areas on the waters of the state for any purpose deemed necessary for the public safety, including, but not limited to, boat speeds and boat traffic. Each such restricted area is to be developed in consultation and coordination with the governing body of the county or municipality in which the restricted area is located.
[10] 392 So.2d at 571-572.
[11] Cf., 53 C.J.S. Licenses s. 9 (the power to require licenses and impose license taxes may be delegated by the Legislature to political subdivisions of the state and where done, their power to license or tax is not inherent but is wholly dependent upon and limited by the statute granting the power).